(52 Misc. Rep. 349)

## UNDERHILL v. SMITH.

(Supreme Court, Special Term, Erie County. December, 1906.)

1. PRINCIPAL AND AGENT—LIABILITY OF AGENT.

> An appraiser of a fire loss, acting under a written appointment of the insured, with knowledge of the provision in the policy that the insured shall pay for the services of the appraiser, cannot as a matter of law recover therefor from an agent of the insured on proof that the appraiser and the agent had, prior to the appointment, a conversation in which the agent stated that he thought he had an appraisal and asked what the appraiser would charge him if given an appraisal, and that the appraiser replied that he would be reasonable with him.

2. COURTS—MUNICIPAL COURTS—JUDGMENT—REVIEW.

> Where an appraiser of a fire loss, acting under an appointment of the insured, with knowledge of the provision in the policy that the insured should pay for his services, recovered judgment in the Municipal Court for his services against an agent of the insured on insufficient proof, the Supreme Court on appeal has authority under the express provisions of Code Civ. Proc. § 3063, to reverse the judgment as against the weight of the evidence.

Appeal from Municipal Court of Buffalo.

Action by Hiram H. Underhill against John J. Smith. From a judgment of the Municipal Court of Buffalo entered on the verdict of the jury in favor of plaintiff, defendant appeals. Reversed.

Vernon Cole, for appellant.
Charles J. Strong, for respondent.

WHEELER, J. This is an appeal from a judgment recovered by the plaintiff in the Municipal Court of Buffalo upon a verdict of a jury. The action was brought to recover for services rendered as an appraiser of a fire loss, and also for services of an umpire in the same matter, which claim was assigned to the plaintiff. The person sustaining the fire loss was one John Jackewicz, but this action was brought against the defendant, John J. Smith, who represented the assured in adjusting the fire loss. The defense was that the services were rendered Jackewicz, the assured, and that this defendant, who was his agent, did not promise or agree to pay for them.

The policy of insurance, like all standard policies, expressly provided in case of a disagreement as to the amount of loss it should be ascertained by two competent appraisers, the assured and the company each selecting one, and the two so chosen in turn selecting an umpire. The policy further provided that the parties should pay the appraiser respectively selected by them, and bear equally the expense of the appraisal and umpire. The insured and the company, having been unable to agree on the loss in accordance with the terms of the policy, executed a written agreement naming appraisers; Jackewicz naming Mr. Underhill and the company one Schneider as its appraiser. They, in turn, named the umpire. They proceeded in the usual way and determined the fire loss. This action is, as stated, to recover for such services as appraier by Mr. Underhill, and also for the services of the umpire, who has assigned his claim to the plaintiff. The action is not

against the assured, but against Smith, and is brought upon the theory that he obligated himself to pay for the services in question.

It appears from the testimony that the plaintiff and the defendant were acquaintenances, and that prior to the designation of the plaintiff as appraiser in this matter the plaintiff had spoken to the defendant about acting as appraiser. The plaintiff testified:

"I was talking to Mr. Smith in regard to fire insurance, and asked him if he had any appraisals; if he had, asked him if he would give me some. He said he thought he had one there. If it went to an appraisal, I could have it. He asked what I would charge him. I told him I would be reasonable with him."

That is all the conversation on the car. It appears that later Mr. Smith saw Mr. Underhill at his home, when Mr. Smith stated that it had gone to an appraisal. Smith brought Underhill the appraisal papers, and had a talk with him about the selection of an umpire. It is further contended that after the appraisal had been completed the plaintiff rendered a bill to the defendant, leaving it on his desk in his absence, and that subsequently the defendant called the plaintiff up on the phone and stated to him he had not received the money, and when he got it the plaintiff would be paid, or words to that effect.

We do not think that upon the entire evidence in this case the plaintiff was entitled to recover. His authority to act or to render any services whatever in the premises came, not from the defendant Smith, but from the insured Jackewicz. Without the written appoin+ment from Jackewicz he could not do a day's work or earn a dollar. This written appointment signed by Jackewicz and the insurance company, and referring to the policy and its provisions, was placed in the plaintiff's hands as his authority to act. He testified he knew its provisions and also the provisions of the policy which provided for the insured paying his charges for services as appraiser. He further testified that he knew that Smith, the defendant, was acting in his capacity as adjuster as the agent of the insured. With these undisputed facts in the case, it seems to this court that the plaintiff was not entitled to recover as a matter of law against this defendant. When he assumed to act as appraiser under a written agreement between the insured and the insurance company, referring to the provisions of the policy by which the compensation for the services of the plaintiff was to be borne by the insured, that the plaintiff must be deemed to have consented to act under those terms and conditions, and could not thereafter expect to look for his pay to the agent who brought about his selection. It is not pretended that there was any talk between the plaintiff and Smith, the defendant, subsequent to the execution of the appraisal agreement, which in any way modified or changed the provisions of the policy as to who should pay for the appraiser's services.

This court is quite aware that it is possible for the agent to bind himself personally, although fully authorized to bind his principal, and when he pledges his personal responsibility he can be held. Cobb v. Knapp, 71 N. Y. 348, 27 Am. Rep. 51; Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050. In determining, however, whether an agent has or has not pledged his personal responsibility, this general rule

must be observed, that, "when the agency is disclosed and the contract relates to the matter of the agency and is without the authority conferred, the agent will not be personally bound unless upon clear and explicit evidence of an intention to substitute or to superadd his personal liability for or to that of the principal." Hall v. Lunderdale, 46, N. Y. 74. See, also, cases of Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050; Baer v. Bonynge, 72 Hun, 38, 25 N. Y. Supp. 666. I can find nothing in the testimony of Mr. Underhill, wherein he states the conversation between himself and Mr. Smith, which evidences any intention on the part of Mr. Smith to pledge his personal responsibility for the plaintiff's services. Such a conversation as the plaintiff relates, standing alone by itself, would leave it very doubtful as to any agreement on the part of Mr. Smith to become personally responsible; but, when taken in connection with the policy and the agreement for appointment of appraisers, we think all real question as to the intention and understanding of the parties is ended.

It is contended by the counsel for plaintiff that the evidence presented simply a question of fact for the determination of the jury, and that this finding should be conclusive. Assuming that it became a question of fact and not one of law, nevertheless the evidence is so very strongly in favor of the defendant's position that it seems to this court the judgment would have to be reversed under the provisions of section 3063, Code Civ. Proc., as against the weight of evidence. In this connection, attention should be called to the fact that as part of the verdict was included an item of $10 for the services of the umpire. We can find no evidence in the entire case justifying a claim against the defendant for such services.

Our conclusion, therefore, is that the judgment must be reversed, with costs to the appellant.